THE STATE EX REL. MUSIAL, APPELLANT, *v.* CITY
OF NORTH OLMSTED ET AL., APPELLEES.

[Cite as *State ex rel. Musial v. N. Olmsted,*
106 Ohio St.3d 459, 2005-Ohio-5521.]

(No. 2005–0252—Submitted July 26, 2005—Decided November 2, 2005.)

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying in part a request for a writ of mandamus to compel access to certain police and ethics commission investigative records.

{¶ 2} Appellant, Norman T. Musial, was the mayor of respondent city of North Olmsted, a principal in the Musial & Musial law firm, and the president of North Olmsted Foundation, Inc., during the pertinent period. North Olmsted owns the Springvale Ballroom Facility ("Springvale"), which it rents for private functions.

{¶ 3} In 2002, the North Olmsted Police Department conducted a criminal investigation of the city's rentals of Springvale by the Musial law firm for a Christmas party in 1999 and by the foundation for the Mayor's Ball from 1998 through 2001. Musial and his administrative assistant had allegedly received lower rental and catering-service prices at Springvale than were available to others holding comparable events at the facility. In July 2002, the police forwarded the results of their investigation to the Cuyahoga County Prosecuting Attorney, the Ohio Ethics Commission, and the North Olmsted Ethics Commission. In October 2002, the police requested that the North Olmsted Ethics Commission review its investigative reports to determine whether any ethics violations had occurred.

{¶ 4} On September 10, 2003, after reviewing the police investigation concerning Springvale, a Cuyahoga County grand jury declined to indict Musial. The Ohio Ethics Commission did not conduct an independent investigation of Musial. On November 24, 2003, the North Olmsted Ethics Commission found that no probable cause existed to believe that Musial had violated any provision of the North Olmsted Ethics Code.

{¶ 5} In September 2003, Musial requested that appellee North Olmsted Police Chief George Ruple provide him with all police records relating to the criminal investigation, including the grand jury proceedings. See R.C. 149.43, Ohio's Public Records Act. After receiving advice from the North Olmsted Director of Law, the police released all pertinent records except those considered exempt confidential law-enforcement investigatory records pursuant to R.C. 149.43(A)(1)(h). The law director later notified both Musial and the police chief that under the city's charter, Musial might be entitled to access the withheld records if he needed them to perform his mayoral duties.

{¶ 6} In December 2003, Musial requested that the law director provide him with access to all investigative reports involving him and his administrative assistant, "including but not limited to any and all reports obtained by the [North Olmsted Ethics] Commission from the Police Department in conducting its review/investigation of this matter." Musial did not specify that he was requesting these records in his capacity as mayor or that he needed the records to perform his duties as mayor. The law director denied Musial's request because the only records reviewed by the North Olmsted Ethics Commission were the police records, which were confidential law-enforcement investigatory records.

{¶ 7} In February 2004, Musial filed a petition for a writ of mandamus in the Court of Appeals for Cuyahoga County. In his amended petition, Musial sought to compel appellees, North Olmsted and its Clerk of City Council, Chief of Police, and Director of Public Safety, to provide access to all records pertaining to him compiled by or held by the city's ethics commission and police department. Musial claimed entitlement to the records under R.C. 149.43, alleging that the city's claimed exemption did not apply because he "was the focus of the * * * investigations and [was] requesting those records pertaining to him." Appellees filed a joint answer.

{¶ 8} On April 6, 2004, appellees moved for summary judgment, claiming that the requested records were exempt from disclosure as confidential law-enforcement investigatory records. Appellees expressly refuted the claim by Musial in his amended petition that the records should be disclosed because he was the focus of the investigations.

{¶ 9} On April 20, 2004, Musial filed a response and cross-motion for summary judgment. On April 23, 2004, Musial filed an amended and restated response in opposition to appellees' motion for summary judgment and a cross-motion for summary judgment. In that amended filing, Musial argued for the first time that the records should be disclosed because charter and statutory provisions require that the city ethics commission's proceedings be open to the public. Appellees moved to strike Musial's amended response. Appellees also filed a reply brief to Musial's initial response.

{¶ 10} As ordered by the court of appeals, appellees submitted an index of pertinent records that it had released in full to Musial, records that had been redacted and released, and records that had been completely withheld from disclosure. Appellees filed unredacted copies of the records and portions of records that they had refused to disclose to Musial.

{¶ 11} On January 7, 2005, the court of appeals denied the writ of mandamus for the majority of the undisclosed records because they were confidential law-enforcement investigatory records. The court of appeals further held, however, that for four of the sealed documents, appellees had redacted too much and that after redacting all identifying information concerning the uncharged suspects, these four records should be released to Musial. The court of appeals denied Musial's request for attorney fees.

{¶ 12} This cause is now before the court upon Musial's appeal as of right.

## Scope of Appeal

{¶ 13} Musial asserts that the court of appeals erred in denying him access to the majority of the requested records and claims that the writ of mandamus should have been granted in full. Although the sealed records are. part of the record on appeal, Musial specifies that a detailed analysis of these records is not necessary because "all of the records can and should be disclosed under Ohio's Public Records law, Ohio's Open Meeting laws, and the North Olmsted City Charter."

{¶ 14} Musial's argument on appeal is thus limited to whether the court of appeals erred in not granting the writ of mandamus to compel disclosure of all the requested records. Consequently, Musial asserts:

{¶ 15} "There is no need for a detailed review of each of the records to determine whether each record is subject to redaction and/or withholding in whole or in part, because the fundamental bases establish that all of the records must be released. *If on the other hand the fundamental bases are not upheld, there is no need to modify the terms of the Court of Appeals decision with respect to its determination as to the disputed records.*" (Emphasis added.)

{¶ 16} Therefore, our review of Musial's appeal is likewise restricted to his express arguments.

## Confidential Law–Enforcement Investigatory Records:

## Confidential Law–Enforcement Records

{¶ 17} The court of appeals denied the writ of mandamus for records and parts of records that it determined to be confidential law-enforcement investigatory records. R.C. 149.43(A)(1)(h) excepts "[c]onfidential law enforcement investigatory records" from the definition of "[p]ublic record" for purposes of the Public

Records Act. R.C. 149.43(A)(2) defines "[c]onfidential law enforcement investigatory record" as "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of" any of the types of information set forth in subsection a, b, c, and d.

{¶ 18} We have recognized that "we employ a two-step test to determine whether a record is exempt as a confidential law-enforcement record under R.C. 149.43:

{¶ 19} " 'First, is the record a confidential law enforcement record? Second, would release of the record 'create a high probability of disclosure' of any one of the four kinds of information specified in R.C. 149.43(A)(2)?' " *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 56, 741 N.E.2d 511, quoting *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 52, 552 N.E.2d 635.

{¶ 20} Regarding the first requirement, Musial contends that the requested records are not confidential law-enforcement records. But appellees established that the requested records satisfied this initial requirement because " '[t]he investigation herein was of specific alleged misconduct, not a routine monitoring investigation.' " *State ex rel. Yant v. Conrad* (1996), 74 Ohio St.3d 681, 660 N.E.2d 1211, quoting *Polovischak*, 50 Ohio St.3d at 53, 552 N.E.2d 635. These records were generated by the police investigation of alleged misconduct of Musial in his capacity as mayor and of his administrative assistant in securing favorable service and rental rates for a city-owned facility. Therefore, the records are confidential law-enforcement records.

Confidential Law–Enforcement Investigatory Records:

Uncharged–Suspect Exemption

{¶ 21} The court of appeals also determined that appellees satisfied the second requirement for the exemption by establishing that release of the records would create a high probability of disclosure of "[t]he identity of a suspect who has not been charged with the offense to which the record pertains." R.C. 149.43(A)(2)(a).

{¶ 22} Musial contends that the court of appeals erred in so holding because this uncharged-suspect exemption does not apply to persons—like him and his administrative assistant—who are the subject of grand jury proceedings, especially when the grand jury did not return an indictment charging the persons with criminal offenses.

{¶ 23} In construing a statute, our paramount concern is legislative intent. *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. In order to determine the statute's intent, we must

" 'read words and phrases in context according to the rules of grammar and common usage.' " *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.,* 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, ¶ 27, quoting *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; R.C. 1.42. A "suspect" is a "person believed to have committed a crime or offense." Garner, Black's Law Dictionary (8th Ed.2004) 1486. A "charge" is a "formal accusation of an offense as a preliminary step to prosecution." Id. at 248.

{¶ 24} A formal accusation of an offense requires a charging instrument, i.e., an indictment, information, or criminal complaint. See Crim.R. 7; see, also, Garner, Black's Law Dictionary (8th Ed.2004) 249, defining "charging instrument" as a "formal document—usu. either an indictment or an information—that sets forth an accusation of a crime."

{¶ 25} Musial was a suspect investigated by the police department, but he was never charged with a criminal offense for the Springvale matter. That is, he was never the subject of an indictment, information, or criminal complaint. In fact, by issuing a no bill, the grand jury specifically decided not to indict Musial or his administrative assistant with a criminal offense. R.C. 2953.51(A) (" 'No bill' means a report by the foreperson or deputy foreperson of a grand jury that an indictment is not found by the grand jury against a person who has been held to answer before the grand jury for the commission of an offense").

{¶ 26} Moreover, this interpretation of the uncharged-suspect exemption is consistent with precedent because "R.C. 149.43(A)(2)(a) excepts records that identify persons *who have neither been charged with nor arrested for an offense.*" (Emphasis added.) *State ex rel. WLWT–TV5 v. Leis* (1997), 77 Ohio St.3d 357, 360, 673 N.E.2d 1365; see, also, *State ex rel. Moreland v. Dayton* (1993), 67 Ohio St.3d 129, 130, 616 N.E.2d 234. Musial has never been charged with or arrested for an offense relating to the Springvale matter.

{¶ 27} Musial next contends that the uncharged-suspect exemption applies only when criminal charges are either pending or highly probable. This contention lacks merit. "[T]he absence of pending or highly probable criminal charges is not fatal to the applicability of the uncharged-suspect exemption." *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 447, 732 N.E.2d 969; see, also, *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 29–30, 661 N.E.2d 180. Musial erroneously relies on cases interpreting the work-product exemption instead of the uncharged-suspect exemption. See *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph five of the syllabus.

{¶ 28} In addition, the fact that the police investigation and the city ethics commission's administrative review of that investigation have concluded does not affect the uncharged-suspect exemption. "The uncharged suspect exception applies despite the passage of time, the lack of enforcement action, or a

prosecutor's decision not to file formal charges." *Master*, 75 Ohio St.3d at 30, 661 N.E.2d 180.

{¶ 29} Therefore, based on the plain language of R.C. 149.43(A)(2)(a) as well as precedent, the court of appeals correctly held that the uncharged-suspect exemption applied to the majority of the withheld records.

### Open Meetings Act and North Olmsted Charter

{¶ 30} Musial next asserts that the confidential law-enforcement investigatory records became public records when they were provided to the city ethics commission because the Open Meetings Act, R.C. 121.22, and the North Olmsted Charter required that the proceedings be open.

{¶ 31} Musial's claims are not properly before the court. He did not raise his claims under R.C. 121.22 or the municipal charter in his petition or amended petition, and appellees did not expressly or impliedly consent to litigation of them in the court of appeals. See *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 42; *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 391, 715 N.E.2d 179.

{¶ 32} Musial did not mention either R.C. 121.22 or the North Olmsted Charter in his original and amended mandamus petitions and did not seek to amend his amended petition to include these claims. Appellees relied on Musial's amended petition to structure their dispositive motion and to submit evidence to support that motion. Appellees moved to strike Musial's amended response and cross-motion for summary judgment, which raised these claims for the first time. Although the court of appeals denied appellees' motion by entry issued on the same date that it rendered its judgment, the court of appeals specified that appellant never claimed that these authorities supersede the statute. The court of appeals did not err in so holding. See *Van Dyke*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, and *Taxpayers Coalition*, 86 Ohio St.3d 385, 715 N.E.2d 179.

{¶ 33} In addition, even if these claims were properly before the court, Musial's argument ignores Section 1(a), Article XV of the North Olmsted Charter, which permits a public body to hold an executive session, closed to the public, solely for the purpose of considering "the investigation of charges or complaint against a public * * * official." The ethics commission reviewed the police investigation records relating to Musial and his administrative assistant to determine whether there was probable cause to believe that ethics violations had occurred.

### Ethics Commission Proceedings:
### Effect on the Applicability of Uncharged–Suspect Exemption

{¶ 34} Musial next contends that the ethics commission proceeding ended the applicability of the uncharged-suspect exemption because he was then charged with violating ethics provisions.

{¶ 35} Musial's contention is erroneous. Disciplinary and administrative reviews of police investigations do not negate the exempt status of confidential law-enforcement investigatory records. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland* (1991), 57 Ohio St.3d 77, 80, 566 N.E.2d 146; *State ex rel. McGee v. Ohio State Bd. of Psychology* (1990), 49 Ohio St.3d 59, 60, 550 N.E.2d 945, overruled in part on other grounds by *Steckman,* 70 Ohio St.3d at 426, 639 N.E.2d 83.

{¶ 36} In addition, Musial was never charged with ethics violations. Instead, the police department merely forwarded its records to the ethics commission for the commission's review. The ethics commission then investigated the matter and determined that no probable cause existed to proceed further against Musial.

{¶ 37} Furthermore, the decision by the police department to forward its investigative records to the city ethics commission for its administrative review did not waive or otherwise affect the uncharged-suspect exemption. See, e.g., *WLWT–TV5,* 77 Ohio St.3d at 361, 673 N.E.2d 1365 ("Absent evidence that respondents have already disclosed the investigatory records to the public and thereby waived application of certain exemptions, the exemptions are fully applicable"). Forwarding the police investigatory records to the ethics commission did not disclose these records to the general public.

## Attorney Fees

{¶ 38} Notwithstanding Musial's assertions to the contrary, the court of appeals acted properly by denying his request for attorney fees. He was not entitled to a fee award, because his mandamus claim was largely without merit. *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 385, 700 N.E.2d 12. Therefore, the court of appeals did not abuse its discretion in denying appellant's request for these fees. See, e.g., *State ex rel. Cranford v. Cleveland,* 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 24.

## Conclusion

{¶ 39} Based on the foregoing, the court of appeals did not err in denying Musial's claim for a writ of mandamus concerning most of the requested records based on the uncharged-suspect exemption. Accordingly, we affirm the judgment of the court of appeals. We also deny Musial's June 14, 2005 motion to allow a proposed supplemental record. The proposed supplement does not further the resolution of this appeal.

Judgment affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

Law Office of Jon S. Musial and Jon S. Musial; Seeley, Savidge & Ebert Co., L.P.A., and Gary A. Ebert, for appellant.

Walter & Haverfield, L.L.P., R. Todd Hunt, and Frederick W. Whatley, for appellees.